Prioletti v. Hampe.

*Richard R. Morelli*, for plaintiff.
*Donald L. Best*, for defendant.

MOTTO, *J.*, August 3, 2012—Before the court for disposition is the motion for summary judgment filed on behalf of defendants George and Holly Hampe, which contends that defendants are entitled to judgment as a matter of law because plaintiffs are unable to prove that their injuries were caused by any negligence of defendants. Defendants specifically contend that plaintiffs have produced no evidence that defendants were negligent in their duty to assure that the residence leased by defendants to plaintiffs was in a safe and habitable condition, that the electrical system in the home was safe and in conformance with all applicable electrical and building codes and that the defendants were on notice of any defective condition which constituted a fire hazard.

On October 3, 2005, a fire occurred at a single family residence located at 842 Morton Street, New Castle, Lawrence County. The defendants, George and Holly Hampe are the owners of the property and leased the premises to the plaintiff, Amy E. Prioletti. Amy Prioletti and two of her young children, including Evan Michael

Prioletti, were in the home when the fire started in the downstairs family room. Ms. Prioletti escaped with one of her children through a second floor window, sustaining personal injuries in her fall. However, Ms. Prioletti was unable to remove her 3-month-old son Evan Michael Prioletti from the residence and he died of smoke inhalation.

On October 17, 2006, plaintiffs John J. Prioletti and Amy E. Prioletti, individually and as administrators to the estate of Evan Michael Prioletti filed a complaint against defendants George and Holly Hampe alleging claims for negligence (count I), wrongful death (count II), survival (count III), and loss of consortium (count V). The complaint also includes a separate count of negligence (count IV) describing the physical injuries sustained by Amy Prioletti and alleging that the injuries were the direct and proximate result of the negligence of the defendants. In the complaint, plaintiffs allege that the defendants, as the owners of the residence at 842 Morton Street and the plaintiffs' landlords "owed a duty to the plaintiffs to assure that the leased premises was in a safe and habitable condition, that the electrical system in the dwelling was safe and in conformance with all applicable electrical and/or other building codes and was free from any defects which constituted a fire hazard." The plaintiffs further allege the Hampes were negligent in the following manner:

A. By leasing a residential dwelling to the plaintiffs which contained electrical wiring and/or outlets and receptacles which were improperly installed and in a dangerous condition thereby rendering them a fire hazard;

B. By negligently installing wiring and/or outlets and receptacles in the living room area of said dwelling in an unsafe and improper manner such as to constitute a fire hazard;

C. By negligently failing to properly secure and/or place the electrical outlet located directly beneath the living room window in its proper outlet box, but rather, by placing or securing said electrical outlet directly to the wood paneling or other wall surface, in violation of applicable building codes and such as to constitute a fire hazard;

D. By negligently failing to install proper and sufficient numbers of smoke detectors in said dwelling and, in the alternative, by failing to advise or instruct the plaintiffs to test said detectors and/or assure that fresh batteries existed in all said smoke detectors.

The plaintiffs allege that, as a direct and proximate result of this negligence by the Hampes, a fire was caused to ignite at the electrical receptacle located directly beneath the living room window. As a result of the fire, Amy Prioletti was injured while escaping the house through a second story window, while her 3-month-old-son Evan Michael Prioletti was unable to get out of the house and died of smoke inhalation.

The parties conducted discovery and the defendants have now filed this motion for summary judgment arguing that 1) plaintiffs have produced no evidence that the fire was caused by any negligent act or omission by defendants; 2) there is no evidence of any hazardous condition in the electrical system in the residence or that the fire was caused by the electrical outlet in the living room; and 3)

the defendants did not have actual or constructive notice any defect in the outlet.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa.Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando Erie ceramic Art Co.*, 764 A.2d 59, 61 (Pa.Super. 2000)(citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa.Super. 1999)). A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Silicones, Inc.*, 756 A.2d 697 (Pa.Super. 2000).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must

be resolved against the moving party. *Hughes v. Seven Springs Farm Inc.*, 563 Pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n.* 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block*, 761 A.2d 1115 (Pa.Super.2001); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa.Super. 2000); *Stevens Painton Corporation v. First State Insurance Company*, 746 A.2d 649 (Pa.Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile*, supra. If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corporation*, 414 Pa.Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa.Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa.Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to

weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa.Cmwlth. 494, 579 A.2d 1358 (1990).

It is well established that the possessor of land has a duty to exercise reasonable care to prevent harm caused by a dangerous condition on the land. *Com., Dept. of Transportation v. Patton*, 546 Pa. 562, 567, 686 A.2d 1302, 1304-05 (1997)(quoting restatement (second) of torts §343). To prevail in a negligence suit, a plaintiff must prove four elements; (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage suffered by the complaining party. *Filter v. McCabe*, 733 A.2d 1274 (Pa.Super 1999), appeal denied 563 Pa. 645, 758 A.2d 1200 (2000); *Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 764 A.2d 1106, 1110 (Pa. Super. 2000).

In *Lopez v. Gukenback*, 391 Pa. 359, 137 A.2d 771 (1958), the Pennsylvania Supreme Court enumerated the well-settled principles concerning a landlord's liability for injuries received by the tenant on the premises as follows:

On the question of the general liability of a landlord to his tenant for injuries received by the tenant of the premises certain legal propositions are well settled: (1) in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the premises in

repair; (2) a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows of can ascertain by a reasonable inspections; (3) a landlord out of possession, however, may be liable (a) where he conceals a dangerous condition of which he has knowledge and cannot be expected to discover and (b) where he knows or should know of a dangerous condition and leases the premised for a purpose involving a "public use" and has reason to believe the tenant will not first correct the condition; (4) a landlord of a multi-tenanted building, reserving control of the common approaches, such as sidewalks, passageways, etc., or parts of the building common to all tenants, such as the roof and walls, is bound to keep such approaches and parts reasonably safe for the use of tenants and their invitees and a landlord becomes liable where he either had actual notice of a defective condition therein or was chargeable with constructive notice, because had he exercised reasonable inspection he would have become aware of it...

*Id.* at 364-365, 137 A.2d at 774-775 (citations omitted). See also *Felton v. Spratley*, 433 Pa.Super. 474, 479-480, 640 A.2d 1358, 1361 (1994). Additionally, a property owner, absent actual notice of a hazardous condition on the premises, will not be liable to a tenant for injuries flowing from such a hazardous condition. *Felton v. Spratley*, 433 Pa.Super at 482, 640 A.2d at 1362. In order to warrant a finding that a landlord failed to exercise reasonable care in discovering and correcting an alleged dangerous condition, it is necessary for a plaintiff to establish that the defendant had either actual or constructive notice of the

condition. *Smith v. M.P.W. Realty Co.*, 423 Pa. 536, 539-40, 225 A.2d 227, 229 (1967); *Loeb v. Allegheny County*, 394 Pa. 433, 147 A.2d 336 (1959). A landlord is charged with having constructive notice when he has knowledge of facts putting him upon inquiry. Once the duty to inquire is raised, the landlord is deemed to have such knowledge as he would have acquired by the exercise of ordinary intelligence and understanding. *Felton v. Spratley*, supra, 433 Pa.Super. at 483, 640 A.2d at 1362.

In the case sub judice, defendants argue that plaintiffs have produced no evidence or expert reports to support their contention that the fire was caused by the electrical receptacle located beneath the living room window and have produced no evidence to establish that the defendants were on notice of any defective condition or themselves created a defective condition which caused the fire. The defendants contend that the only proof of the cause and origin of the fire is contained in the Pennsylvania State Police Fire Marshall's report which states that the fire began in the living room area and, was likely caused by a child playing with a lighter.

Defendants produced the report of Pennsylvania State Police Fire Marshall Mark Baer who investigated the scene of the fire shortly after the fire occurred. Defendants contend that the investigation by the Pennsylvania State Police and their subsequent findings establishes that the fire of October 3, 2005 was not caused by the electrical outlet receptacle located directly beneath the living room window in the residence, as alleged in plaintiffs' complaint. Defendants argue that because the fire marshall found no arcing inside the outlet box or charring of the baseboard

around the outlet, the outlet was eliminated as a cause of the fire. In his report, the fire marshall determined that the fire originated near the television located to the right of the window and outlet, which was consistent with Amy Prioletti's observations when she first saw the fire.

Furthermore, defendants contend that the plaintiffs cannot sustain their negligence claim because plaintiffs have not proved that defendants breached any duty owed to the plaintiffs as the evidence presented establishes that there were no problems with the electrical system in the house before the fire; plaintiffs did not see or experience any problems with the outlet below the front living room window at any time before the fire; that the outlet below the front living room window worked properly when it was used by plaintiffs before the fire; the defendants did not have notice of any problem or condition that indicated the outlet below the front living room window was a hazard before the fire; and the inspection by the New Castle Code Enforcement Department and issuance of a certificate for rental by the department established that the dwelling and the electrical system in the home were in a safe and proper condition.

Moreover, defendants contend that evidence presented establishes that the fire was not caused by any negligent act or omission on their part and no evidence was presented that any hazardous condition exists in the electrical system in the residence and even if the outlet in the living room was installed in a negligent manner as alleged by the plaintiffs, the evidence establishes that defendants did not have notice of the improper installation of any defect in the outlet. Therefore, defendants contend that no

genuine issue of material fact exists and they are entitled to judgment as a matter of law.

In response to defendant's motion for summary judgment plaintiffs produced a report by forensic engineer, Samuel J. Sero, P.E. that differs from the findings of the state fire marshall regarding the origin of the fire. In his report, Mr. Sero noted that after a through examination of the interior and exterior of the house, it is evident that the fire emanated from below the front living room window. Further examination revealed that the area beneath the window contained a duplex receptacle which exhibited fire destruction emanating from its back or box interior aspect. An examination of the receptacle showed that it was improperly mounted to a piece of thin paneling material and not attached to a stud in a proper box. Mr. Sero found that since the receptacle was not properly and rigidly mounted, as devices are plugged and unplugged into the receptacle, it will move causing the loosening of the wire attachment terminal screws. When these screws are loose, arcing occurs at the interface of the wire and its terminal tab. This arcing results in the breakdown of the receptacle plastic material into a carbon resistor component which will eventually begin to get red hot and result in ignition of the plastic material and cause a fire. Mr. Sero based his opinion to a reasonable degree of engineering certainly that the cause of the fire was the improper installation of the outlet in the living room.

Furthermore, Mr. Sero noted that the improper installation of the receptacle would have been readily apparent to the landlord by simply pushing on the face of the receptacle. Because of the way the receptacle was attached

to a thin piece of paneling, the defective condition would have been easily determined by the defendants. Mr. Sero also noted in his report that the fire marshall determined that the fire was not caused by electrical activity, basing his determination that there was not any electrical arcing inside or outside of the outlet box. However, Mr. Sero noted in his report that ignition by loose wiring or heating will not leave any arcing evidence that is readily apparent to the naked eye. The small arcs which occur at the wire and terminal tab interface would only been seen by a close inspection of the terminals.

This court finds that the expert report of forensic engineer Samuel Sero raises a genuine issue of material fact about the origin of the fire. While the fire marshall concludes that the most logical ignition sequence would have involved a juvenile playing with a lighter, that conclusion is based solely on the fact that the fire marshall observed smoking material in the room of origin. According to the deposition testimony of plaintiff Amy Prioletti, the fire marshall's interview of her focused on her son John and his use of matches or a lighter. The only testimony Amy Prioletti gave to the fire marshall was that it was her son John who first saw the fire and ran upstairs and told her that the fire "came through the window". The report of the fire marshall focuses solely on the cause being a child playing with a lighter and discounts the possibility of the fire originating in the outlet under the living room window. The court finds that the contradictory report of forensic engineer Samuel Sero creates a genuine issue of material fact as the origin of the fire and defendants liability based on negligence.

Additionally, the plaintiffs presented evidence that defendants had actual notice of the defective condition of the electrical outlet beneath the front living room window. In the deposition testimony of former tenants, Richard and Sherlin Stitt, Sherlin Stitt testified that while a tenant in the home on 842 Morton Street from 2003 to 2004, on at least two occasions she experienced sparking at the electrical outlet beneath the front living room window and black smoke residue was left on the receptacle on at least one occasion. Mrs. Stitt testified that while she does not remember the exact date of when she informed defendants about the sparking outlet, she cannot image not calling them about it and that she's sure she would have called them about it. Plaintiffs contend that at the very least, this testimony creates a genuine issue of material fact as to whether the defendants were on actual notice of the existence of the defective outlet.

For the foregoing reasons, this court finds that based upon all the evidence of record, including the expert report of forensic engineer Samuel Sero and the report of the Pennsylvania State Police Fire Marshall,, that plaintiffs have shown a genuine issue of material fact for a cause of action based on negligence. Accordingly, defendants' motion for summary judgment is denied.

## ORDER OF COURT

And now, August 3, 2012, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that defendant's motion for summary judgment is denied.